IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| HEADWATERS RESOURCES, INC., <br><br> Plaintiff, <br> v. <br><br> ILLINOIS UNION INSURANCE COMPANY and ACE AMERICAN INSURANCE COMPANY, <br><br> Defendants. | MEMORANDUM DECISION AND ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS <br><br> Case No. 2:09-cv-1079 DN <br><br> District Judge David Nuffer |

This is an insurance coverage case arising out of seven commercial general liability insurance policies issued by Defendants Illinois Union Insurance Company and ACE American Insurance Company to Headwaters, Inc. and its subsidiaries (including Plaintiff Headwaters Resources, Inc.) from approximately March 2003 to October 2009. Headwaters Resources has asserted claims in this case for breach of contract and bad faith, alleging that Illinois Union and ACE American breached the terms of the insurance policies by denying coverage for two lawsuits filed against Headwaters Resources in Virginia state court without conducting a meaningful investigation.[1]

Illinois Union and ACE American have moved for summary judgment on both of Headwaters Resources' claims, arguing that the claims made in the Virginia lawsuits were excluded from coverage by the pollution exclusions contained in the policies, and that Illinois Union and ACE American were therefore entitled to decline coverage.[2] Headwaters Resources

---

[1] Amended Complaint, docket no. 30, filed on Jan. 12, 2011.

[2] Defendants Illinois Union Insurance Company and ACE American Insurance Company's Motion for Summary Judgment, docket no. 49, filed on Dec. 9, 2011.

also filed a motion for summary judgment, arguing that the allegations made in the Virginia lawsuits, along with information available to Illinois Union and ACE American, created a possibility for liability covered under the policies, thereby triggering the insurers' duty to pay for defense costs.[3]

As outlined below, the complaints in the Virginia lawsuits alleged bodily injury and property damage arising out of the actual or threatened dispersal of pollutants from waste that was processed by Headwaters Resources. These allegations fall squarely within the pollution exclusions contained in the insurance policies. Accordingly, Illinois Union and ACE American properly declined coverage under the policies for the Virginia lawsuits. Summary judgment is therefore GRANTED in favor of Illinois Union and ACE American on both of Headwaters Resources' claims.[4]

UNDISPUTED FACTS

The Insurance Policies

There are seven commercial general liability insurance policies at issue in this case. The first four policies were issued by Illinois Union, covering March 1, 2003-March 14, 2004 (the "2003-2004 Policy"); March 15, 2004-March 15, 2005 (the "2004-2005 Policy"); March 15, 2005-October 1, 2005 (the "2005-2005 Policy"); and October 1, 2005-October 1, 2006 (the "2005-2006 Policy"). The last three policies were issued by ACE American, covering October 1, 2006-October 1, 2007 (the "2006-2007 Policy"), October 1, 2007-October 1, 2008 (the "2007-2008 Policy"), and October 1, 2008-October 1, 2009 (the "2008-2009 Policy"). The 2003-2004

---

[3] Headwater's Cross Motion for Partial Summary Judgment, docket no. 57, filed on Jan. 13, 2012.

[4] Illinois Union and ACE American also moved for summary judgment on grounds that the complaints in the underlying litigation did not allege an "occurrence," as that term is defined in the policies. Defendants Illinois Union Insurance Co. and ACE American Insurance Co.'s Cross-Motion for Summary Judgment Re: No Occurrence and 2003-2004 Policy, docket no. 78, filed on February 14, 2012. Because of its conclusion with regard to application of the pollution exclusions, the court does not reach the "occurrence" issue.

Policy was issued to ISG Resources, Inc., which was later renamed Headwaters Resources, Inc. after it was acquired by Headwaters, Inc.[5] In April 2004, ISG Resources acquired VFL Technology Corporation, which was a separate subsidiary of ISG Resources/Headwaters Resources until 2008 when it was merged into Headwaters Resources.[6] The rest of the policies were issued to Headwaters, Inc. and listed both Headwaters Resources and VFL as named insureds.[7]

Generally, each of the policies provides insurance coverage for "bodily injury" and "property damage" caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[8] In place of a duty to defend, the policies require the insurer to reimburse defense costs for lawsuits seeking covered damages once the insured's retention amount is reached. Each of the policies contains a coverage exclusion for "pollution," although the language of the pollution exclusions varies among the policies.

### The Underlying Litigation

In 2009, two lawsuits were filed against Headwaters, Inc., VFL Technology Corporation, and several other defendants in the Circuit Court for the City of Chesapeake, Virginia. The first complaint was filed in March 2009 by 395 purported current or former residents of the City of Chesapeake who allegedly lived in close proximity to 220 acres of unimproved and swampy agricultural land referred to as the "Fentress Site" that was located in the middle of a populated

---

[5] 2003-2004 Policy, docket no. 52-3, filed on Dec. 9, 2011; Headwaters Combined Memorandum in Opposition to Defendants' Motion for Summary Judgment and in Support of Cross Motion for Summary Judgment ("Headwaters Resources' Combined Memorandum") at I-4, docket no. 58, filed on Jan. 13, 2012.

[6] Headwaters Resources' Combined Memorandum at I-4.

[7] *Id.* at I-26–I-27.

[8] Copies of the policies are found at docket nos. 52-3–52-9.

residential community.[9] The first lawsuit is referred to as the "Fentress" lawsuit after its first named plaintiff, the Fentress Family Trust. The second complaint was filed in August 2009 by 62 plaintiffs who likewise allegedly lived near the Fentress Site.[10] The second lawsuit is referred to as the "Sears" lawsuit after its first named plaintiff, Daryl Sears. Both lawsuits mistakenly named Headwaters, Inc. as a defendant, but later substituted Headwaters Resources, Inc. as the proper defendant.[11]

The Fentress and Sears complaints allege that between 2002 and at least March 2007, VFL and other defendants dumped 1.5 million tons of "toxic coal ash and binding agent" on the Fentress Site under the "guise" of building a golf course.[12] Coal ash, including fly ash and bottom ash, is alleged to be a "coal combustion waste product" created in the generation of electricity at coal-fired power plants.[13] The coal ash that was dumped at the Fentress Site allegedly came from a clay-lined landfill at the Chesapeake Energy Center after Dominion Virginia Power received a letter warning from the Virginia Department of Environmental Quality about excessive coal ash buildup.[14] The complaints further allege that Dominion's plan was to dump its excessive coal ash at the Fentress Site under the guise of using it as structural fill to sculpt a golf course, but in reality the Fentress Site was a "toxic waste dump."[15]

The Fentress and Sears plaintiffs allege that the coal ash dumped at the Fentress Site contained "toxic substances" (including arsenic, lead, mercury, ammonia nitrates, chromium, beryllium, zinc, thallium, boron, barium, and magnesium) that have and continue to leach into

---

[9] Fentress Complaint ¶¶ 1, 20, docket no. 53-2, filed on Dec. 9, 2011.

[10] Sears Complaint ¶¶ 1, 25, docket no. 53-11, filed on Dec. 9, 2011.

[11] Headwaters Resources' Combined Memorandum at I-4.

[12] Fentress Complaint ¶¶ 1-2, 12, 65, 129; Sears Complaint ¶¶ 1, 4, 135, 146.

[13] Fentress Complaint ¶¶ 44-47; Sears Complaint ¶¶ 47-50.

[14] Fentress Complaint ¶ 10; Sears Complaint ¶¶ 14-16.

[15] Fentress Complaint ¶ 130; Sears Complaint ¶¶ 136, 187.

the ground water and into the wells of the plaintiffs.[16] Accordingly, they seek "damages for losses to real and personal property, personal injuries, loss of quality of life, economic losses to business disruption, out-of-pocket expenses, and medical monitoring of their exposure to toxic compounds in coal ash and binding agent and potential health effects that may result."[17]

These forceful allegations are tempered somewhat by other allegations in the complaints. Both complaints allege that Dominion hired VFL as its "coal ash management consultant" and commissioned feasibility studies for the proposed use of fly ash as fill material for construction of a golf course of the Fentress Site.[18] The feasibility studies were conducted by URS Corporation, "a global engineering, construction and technical services firm."[19] The plan allegedly called for adding a "binding agent," which Headwaters Resources identifies as cement kiln dust, to the fly ash in certain quantities to prevent or reduce leaching of materials from the fly ash.[20] Dominion allegedly sought a permit from the City of Chesapeake prior to beginning work.[21] As Dominion's coal ash management consultant, VFL purchased and operated a portably fly ash pug mill at Dominion's Chesapeake Energy Center, which VFL used to mix the fly ash and cement kiln dust.[22] VFL then transported the "coal ash and binding agent" to the Fentress Site.[23] The complaints both concede that the golf course was in fact built and opened at the Fentress Site.[24]

---

[16] Fentress Complaint ¶¶ 5-8; Sears Complaint ¶¶ 9-12.

[17] Fentress Complaint ¶ 17; Sears Complaint ¶ 22.

[18] Fentress Complaint ¶ 24; Sears Complaint ¶¶ 28, 87.

[19] Sears Complaint ¶ 87.

[20] Sears Complaint ¶¶ 134-135, 352.

[21] Fentress Complaint ¶ 75; Sears Complaint ¶ 79.

[22] Fentress Complaint ¶¶ 24, 113; Sears Complaint ¶¶ 28, 114; Headwaters Resources' Combined Memorandum at I-10.

[23] Fentress Complaint ¶ 24; Sears Complaint ¶ 28.

[24] Fentress Complaint ¶¶ 25, 142; Sears Complaint ¶¶ 29, 190.

Counsel for the parties represented at oral argument on the summary judgment motions that the Fentress and Sears lawsuits have not yet been resolved.

Headwaters Resources' Insurance Claim

Headwaters Resources sought reimbursement of defense costs for the Fentress and Sears lawsuits under the policies issued by Illinois Union and ACE American beginning in July 2009.[25] Correspondence and other materials provided by Headwaters Resources in connection with its insurance claim described the Fentress and Sears lawsuits consistent with the allegations outlined above.[26]

In making their coverage determination, Illinois Union and ACE American also had access to the information concerning Headwaters Resources' coal ash business contained in their underwriting files. The insurance applications and other materials in the underwriting files show Illinois Union and ACE American were aware that Headwaters Resources and its predecessors derived their revenue from collecting, disposing, and recycling fly ash and selling fly ash products.[27] The underwriting files also contained materials showing that Headwaters Resources' use of fly ash was apparently accepted in the industry. For example, a website printout from the Coal Combustion Products Partnership (sponsored in part by the EPA) contained in the underwriting file lists potential fly ash applications, including "[f]ill material for structural applications and embankments," "[i]ngredient in waste stabilization and/or solidification," and "[i]ngredient in soil modification and/or stabilization."[28]

---

[25] Jul. 6, 2009 Letter, docket no. 51-2, filed on Dec. 9, 2012; Headwaters Resources' Combined Memorandum at I-23.

[26] *See* Jul. 6, 2009 Letter, docket no. 51-2, filed on Dec. 9, 2011; Sep. 10, 2009 letter, docket no. 51-3, filed on Dec. 9, 2011; Sep. 29, 2009 letter, docket no. 51-4, filed on Dec. 9, 2011.

[27] Headwaters Resources' Combined Memorandum at I-49−I-56.

[28] *See, e.g.*, Coal Combustion Products Partnership Webpage, docket no. 61-5 at App. 106, filed on Jan. 13, 2012.

On November 9, 2009, Illinois Union and ACE American declined Headwaters Resources' insurance claim after concluding that coverage for the Fentress and Sears lawsuits was precluded by the pollution exclusions in the policies.[29] This decision was made based on the allegations made in the Fentress and Sears complaints and "the information provided to or otherwise learned by [Illinois Union and ACE American]."[30]

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[31] In applying this standard, the court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[32] However, "the nonmoving party must present more than a scintilla of evidence in favor of his position."[33] A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[34]

## DISCUSSION

I.   Breach of Contract

Under Utah law,[35] "[a]n insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts."[36] As a result,

---

[29] Nov. 9, 2009 Letter, docket no. 65-7 at App. 1325-1347, filed on Jan. 13, 2012.

[30] *Id.* at App. 1325; Headwaters Resources' Combined Memorandum at I-71–I-72.

[31] Fed. R. Civ. P. 56(a).

[32] *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1204 (10th Cir. 2011) (internal quotations omitted).

[33] *Ford v. Pryor*, 552 F.3d 1174, 1178 (10th Cir. 2008).

[34] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).

[35] The parties agree that Utah law applies to Headwaters Resources' claims. Headwaters Resources' Combined Memorandum at I-28.

[36] *Alf v. State Farm Fire and Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993).

courts may not enforce the insured's reasonable expectations at the expense of the plain language of the policy.[37] However, ambiguous provisions of insurance contracts, which are contracts of adhesion, are construed against the insurer and in favor of coverage.[38]

"An insurer's duty to defend arises solely under [the terms of the] contact."[39] Whether the insurer's duty to defend is triggered by a lawsuit filed against the insured is generally determined by comparing the language of the insurance policy with the allegations in the complaint.[40] Where, as in this case,[41] the insurance policy "make[s] the duty to defend dependent on the *allegations* against the insured, extrinsic evidence is irrelevant to a determination of whether a duty to defend exists."[42] However, if the factual allegations in the underlying complaint leave coverage uncertain, "the insurer must defend until those uncertainties can be resolved against coverage."[43]

> A. The Pollution Exclusion in the 2003-2004 Policy Precludes Coverage for the Fentress and Sears Lawsuits.

The pollution exclusion in the 2003-2004 Policy precludes coverage for

(1) 'bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants':

> (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. . . . ;

---

[37] *Allen v. Prudential Prop. and Cas. Ins. Co.*, 839 P.2d 798, 807 (Utah 1992).

[38] *Fire Ins. Exch. v. Oltmanns*, 285 P.3d 802, 805 (Utah Ct. App. 2012).

[39] *Equine Assisted Growth and Learning Ass'n v. Carolina Cas. Ins. Co.*, 266 P.3d 733, 735 (Utah 2011) (internal quotation marks omitted).

[40] *Fire Ins. Exch. v. Therkelsen*, 27 P.3d 555, 560 (Utah 2001) (internal quotation marks omitted).

[41] *See, e.g.*, 2003-2004 Policy at ¶ I.1.a, ¶ V.18 and Endorsement 1, docket no. 52-3, filed on Dec. 9, 2011.

[42] *Therkelsen*, 27 P.3d at 561.

[43] *Equine Assisted Growth*, 266 P.3d at 736 (internal quotation marks omitted).

> (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;
>
> (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:
>
>> (i) Any insured; or
>>
>> (ii) Any person or organization for whom you may be legally responsible; . . .
>
> (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. . . . ; [or]
>
> (e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".[44]

"Pollutants" are defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."[45]

The Fentress and Sears complaints allege that "toxic substances" have and continue to leach from the material placed by VFL on the Fentress Site, contaminating the ground water and the plaintiffs' wells.[46]  These alleged solid or liquid contaminants fit within the definition of pollutants, and are alleged to have caused both personal injury and property damage.[47]  Accordingly, if any of parts (a)-(e) of the pollution exclusion applies, coverage for the Fentress and Sears lawsuits is excluded under the 2003-2004 Policy.

---

[44] 2003-2004 Policy at CGL ¶ I.2.f.1.b-c, docket no. 52-3, filed on Dec. 9, 2011.

[45] *Id.* at CGL ¶ V.15.

[46] Fentress Complaint ¶¶ 5-8; Sears Complaint ¶¶ 9-12.

[47] Fentress Complaint ¶ 17; Sears Complaint ¶ 22.

Illinois Union and ACE American argue that parts (b), (c), (d), and (e) all apply to the Fentress and Sears lawsuits. By their own terms, parts (d) and (e) apply only if VFL was still performing operations at the Fentress Site when the bodily injury or property damage occurred. The Fentress and Sears complaints, which were filed in 2009, contemplate past, present, and future bodily injury and property damage.[48] As a result, at least some of the bodily injury and property damage was alleged to have occurred after VFL's operations at the Fentress Site allegedly ceased in March 2007. Therefore, parts (d) and (e) are insufficient to relieve Illinois Union and ACE American of their duty to pay defense costs based solely on the allegations of the Fentress and Sears complaints.

With regard to part (b), the Fentress and Sears complaints allege that the Fentress Site was used for the disposal of "fly ash and binding agent."[49] However, as pointed out by Headwaters Resources, the complaints allege that VFL mixed the fly ash with cement kiln dust at the Chesapeake Energy Center and then transported the combined material to the Fentress Site.[50] Headwaters Resources argues that the combined material placed at the Fentress Site was no longer "waste" because it had already been "recycled, reconditioned or reclaimed." Therefore, the Fentress Site was not used for the "handling, storage, disposal, processing or treatment of waste" under part (b) of the pollution exclusion.

However, even assuming the combined material placed at the Fentress Site was no longer waste, the fly ash from which the pollutants leached was still waste before it was "recycled, reconditioned or reclaimed" by mixing in cement kiln dust. The Fentress and Sears complaints allege that VFL purchased and operated a portable fly ash pug mill at Dominion's Chesapeake

---

[48] Fentress Complaint ¶¶ 13, 17; Sears Complaint ¶¶ 12, 17, 22.

[49] Fentress Complaint ¶ 130; Sears Complaint ¶¶ 136, 187.

[50] Fentress Complaint ¶¶ 24, 113; Sears Complaint ¶¶ 28, 114; Headwaters Resources' Combined Memorandum at I-10.

Energy Center, which VFL used to mix the fly ash and cement kiln dust before it was transported and placed at the Fentress Site.[51] In other words, the pollutants that allegedly resulted in the Fentress and Sears plaintiffs' bodily injury and property damage were "processed as waste" by VFL, an insured.[52] The allegations of the Fentress and Sears complaints thus trigger part (c) of the pollution exclusion, precluding coverage under the 2003-2004 Policy. As coverage is definitively excluded by the allegations of the complaints, the extrinsic evidence proffered by Headwaters Resources — which is consistent with the allegations that VFL mixed the fly ash with cement kiln dust in any event — is irrelevant.

   B. The Pollution Exclusion in the CGL Form of the 2006-2007 Policy Precludes Coverage for the Fentress and Sears Lawsuits.

The 2006-2007 Policy contains the same pollution exclusion in its Commercial General Liability Form as the one found in the 2003-2004 Policy.[53] However, there are also two endorsements to the 2006-2007 Policy concerning the pollution exclusion: Endorsement 14 and Endorsement 25. Endorsement 14, titled "Absolute Pollution Exclusion," was apparently included with the 2006-2007 Policy when it was originally issued, and states that it "replaces any pollution exclusion and amends all insurance provided under the . . . Commercial General Liability Form."[54] Under Endorsement 14, the policy "does not apply to any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to pollution,

---

[51] Fentress Complaint ¶¶ 24, 113; Sears Complaint ¶¶ 28, 114; Headwaters Resources' Combined Memorandum at I-10.

[52] Illinois Union and ACE American assert that VFL was not an insured under the 2003-2004 Policy. However, the allegations in the Fentress and Sears complaints appropriately refer to both VFL and Headwaters Resources (which acquired and later merged with VFL) collectively as "VFL" in all applicable allegations. Fentress Complaint p. 46; Sears Complaint p. 11. It is undisputed that Headwaters Resources (then known as ISG Resources, Inc.) was a named insured under the 2003-2004 Policy. Accordingly, for purposes of summary judgment, the court will treat both VFL and Headwaters Resources as named insureds under the 2003-2004 Policy.

[53] 2006-2007 Policy at CGL ¶ I.2.f.1.b-c, docket no. 52-7, filed on Dec. 9, 2011.

[54] *Id.* at Endorsement 14.

however caused."[55]    Endorsement 25 was issued in February 2007 with a retroactive effective date of October 1, 2006, and states as follows: "Endorsement number 14 – Absolute Pollution Exclusion is hereby deleted in its entirety.  All other terms and conditions remain unchanged."[56]

The end result of Endorsements 14 and 25 is that the pollution exclusion in the CGL Form is an operative provision in the 2006-2007 Policy.  Headwaters Resources argues that the pollution exclusion in the CGL Form never became part of the 2006-2007 Policy because Endorsement 14 was included with the policy when it was issued.  Therefore, according to Headwaters Resources, when Endorsement 25 later deleted Endorsement 14, the 2006-2007 Policy no longer contained any pollution exclusion.  The court disagrees.

While operative, Endorsement 14 "replace[d]" the pollution exclusion and "amend[ed]" the insurance provided in the CGL Form.  Endorsement 14 did not delete or remove the pollution exclusion from the CGL form — it merely rendered the CGL pollution exclusion inoperative in favor of the Absolute Pollution Exclusion in Endorsement 14.  When Endorsement 25 later "deleted" Endorsement 14 "in its entirety," Endorsement 14 was no longer part of the 2006-2007 Policy and therefore no longer "replace[d]" or rendered the CGL pollution exclusion inoperative.  Accordingly, absent Endorsement 14, the CGL pollution exclusion is an operative provision of the 2006-2007 Policy.  As does the pollution exclusion in the 2003-2004 Policy, the CGL pollution exclusion in the 2006-2007 Policy precludes coverage for the Fentress and Sears lawsuits.

---

[55] *Id.*

[56] *Id.* at Endorsement 25.

  C. The Remaining Policies Each Contain a Pollution Exclusion Precluding Coverage for the Fentress and Sears Lawsuits.

The 2004-2005 Policy, the 2005-2005 Policy, the 2005-2006 Policy, the 2007-2008 Policy, and the 2008-2009 Policy (the "Remaining Policies") each exclude coverage for "any injury, damage, expense, cost, loss, . . . liability or legal obligation arising out of or in any way related to pollution, however caused."[57] Pollution includes "the actual, alleged or potential presence in or introduction into the environment of . . . any substance, [including pollutants,] if such substance has, or is alleged to have, the effect of making the environment impure, harmful, or dangerous . . . ."[58]

The Fentress and Sears complaints allege personal injury and property damage from "toxic substances" that have and continue to leach from the material placed by VFL on the Fentress Site into the ground water and into the plaintiffs' wells.[59] These allegations place the Fentress and Sears lawsuits squarely within the exclusions for damages arising out of pollution found in the Remaining Policies.

Headwaters Resources does not argue to the contrary. Rather, Headwaters Resources asserts that the exclusions in the Remaining Policies cannot be enforced at all because they do not "clearly and unmistakably communicate[] to the insured the specific circumstances under which the expected coverage will not be provided."[60] Headwaters Resources contends that the

---

[57] 2004-2005 Policy at CGL ¶ I.2.f, docket no. 52-4, filed on Dec. 9, 2011; 2005-2005 Policy at CGL ¶ I.2.f, docket no. 52-5, filed on Dec. 9, 2011; 2005-2006 Policy at CGL ¶ I.2.f, docket no. 52-6, filed on Dec. 9, 2011; 2007-2008 Policy at Endorsement 31, docket no. 52-8, filed on Dec. 9, 2011; 2008-2009 Policy at Endorsement 30, docket no. 52-9, filed on Dec. 9, 2011.

[58] *Id.*

[59] Fentress Complaint ¶¶ 5-8, 17; Sears Complaint ¶¶ 9-12, 22.

[60] *Alf*, 850 P.2d at 1275.

pollution exclusions are so broad that they could "turn a claim for slipping on a puddle or ice from a garden hose into an excluded pollution claim."[61]

Although their broad language could conceivably reach some situations that do not involve traditional environmental pollution, the pollution exclusions in the Remaining Policies are enforceable when narrowly construed. This is illustrated by *United National Insurance Company v. International Petroleum & Exploration*,[62] a liability insurance coverage case relied on by Headwaters Resources. The underlying claims in *United National* were for bodily injury, including wrongful death, arising out of an explosion that occurred while disposing of "waste material" from oil wells.[63] The liability insurance policy at issue contained a pollution exclusion similar to the one contained in the 2003-2004 Policy and in the 2006-2007 Policy, which excluded coverage for "'[b]odily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'"[64] "Pollutants" were defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."[65]

In applying the pollution exclusion to the underlying wrongful death claims, the *United National* court recognized that the language of the exclusion, if literally construed, "could apply to preclude coverage for accidents occurring during normal business activities . . . involving everyday elements [such] as water or air."[66] However, the "Pollution" exclusion could also

---

[61] Headwaters Resources' Combined Memorandum at II-28.

[62] No. 2:04-cv-631, 2007 WL 4561460 (D. Utah Dec. 20, 2007).

[63] *Id.* at *2.

[64] *Id.* at *9-10.

[65] *Id.* at *10.

[66] *Id.* at *11.

reasonably be interpreted as precluding "bodily injury . . . caused by a pollutant acting as a pollutant, or in other words, by traditional environmental pollution."[67] Noting this ambiguity, the court applied the narrow construction and concluded that coverage for the explosion, which did not involve traditional environmental pollution, was not barred by the pollution exclusion.[68]

As in *United National*, the pollution exclusions in the Remaining Policies must be construed narrowly to avoid excluding coverage for bodily injury or property damage not caused by a "pollutant acting as a pollutant."[69] However, they are enforceable as narrowly construed. Whatever else they may arguable reach, the "pollution" exclusions clearly and unmistakably communicate that the Remaining Policies do not provide coverage for traditional environmental pollution.

The Fentress and Sears complaints allege traditional environmental pollution — that the aquifer and the plaintiffs' individual wells were polluted by toxic substances that have leached from the material placed at the Fentress Site by Headwaters Resources. Even when narrowly construed against the insurer, the pollution exclusions in the Remaining Polices thus preclude coverage for the Fentress and Sears lawsuits.

Illinois Union and ACE American are therefore entitled to summary judgment in their favor on Headwaters Resources' claim for breach of contract.

II.     Bad Faith

Illinois Union and ACE American had an "obligation of good faith performance" under the liability policies issued to Headwaters Resources to "diligently investigate the facts" related to the claims asserted against Headwaters Resources in the Fentress and Sears lawsuits, to "fairly

---

[67] *Id.*

[68] *Id.*

[69] *Id.*

evaluate" those claims, and to "act promptly and reasonably in rejecting or settling the claim[s]."[70] Headwaters Resources claims Illinois Union and ACE American breached their good faith obligations by denying coverage for the Fentress and Sears lawsuits without conducting any meaningful investigation.[71]

Illinois Union and ACE American declined coverage for the Fentress and Sears lawsuits on grounds that coverage was precluded by the pollution exclusions in the policies based on their review of the allegations in the underlying complaints and on information provided by Headwaters Resources' attorney or otherwise available.[72] As the policies issued to Headwaters Resources "make the duty to defend dependent on the *allegations* against the insured," Illinois Union and ACE American were not required to take their investigation beyond the allegations of the Fentress and Sears complains unless those allegations left coverage uncertain.[73] The allegations in the underlying complaints established that coverage for the Fentress and Sears lawsuits was precluded by the pollution exclusions in the policies.[74] Accordingly, by reviewing the allegations of the Fentress and Sears complaints, fairly evaluating the claims asserted, and promptly declining coverage, Illinois Union and ACE American satisfied their duties of good faith performance under the policies.

Illinois Union and ACE American are therefore entitled to summary judgment on Headwaters Resources' claim for bad faith.

---

[70] *Black v. Allstate Ins. Co.*, 100 P.3d 1163, 1168 (Utah 2004).

[71] Headwaters Resources' Combined Memorandum at I-2, I-33–I-34.

[72] Nov. 9, 2009 Letter, docket no. 65-7 at App. 1325-1347, filed on Jan. 13, 2012; Headwaters Resources' Combined Memorandum at I-71–I-72.

[73] *See, e.g.*, 2003-2004 Policy at ¶¶ I.1.a, V.18 and Endorsement 1, docket no. 52-3, filed on Dec. 9, 2011; *Therkelsen*, 27 P.3d at 561; *Equine Assisted Growth*, 266 P.3d at 736 (internal quotation marks omitted).

[74] *See* Part I above.

CONCLUSION AND ORDER

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (docket no. 49) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Cross Motion for Partial Summary Judgment (docket no. 57) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Strike (docket no. 70) and Cross-Motion for Summary Judgment Re: No Occurrence and 2003-2004 Policy (docket no. 78) are DENIED AS MOOT.

IT IS FURTHER ORDERED that summary judgment is ENTERED in favor of Defendants Illinois Union Insurance Company and ACE American Insurance Company on all of Plaintiff Headwaters Resources, Inc.'s claims in this case.

IT IS FURTHER ORDERED that the clerk of the court close this case.

Dated December 20, 2012.

BY THE COURT:

David Nuffer
United States District Judge